### THE A. B. VALENTINE.

(District Court, N. D. New York. March 27, 1893.)

COLLISION—STEAMER AND TUG WITH TOW.

A large steamboat, while passing upward through the draw of the New York Central Railroad bridge at Albany, noticed a tug which had just disengaged a tow from its berth, or from another boat, about 400 feet above the bridge, and immediately blew a signal of inquiry. Receiving no answer, she ported her helm as far as she could safely do in the narrow channel, and reversed, but, the tug having taken a course directly across the river, a collision ensued, whereby the tow was injured. *Held* that, in view of the steamer's ignorance of the tug's intention, she did all that good seamanship required, and was not in fault.

In Admiralty. Libel for collision. Dismissed.

George Clinton, for libelant.
Amos Van Etten, for claimant.

COXE, District Judge. On the morning of the 14th day of September, 1892, the canal boat Harrigan while lashed to the tug Vassar was injured by a collision with the steamboat Valentine. Soon after the accident and before this suit the Vassar was destroyed by fire. The libel is, therefore, against the Valentine alone. The Valentine is a large side-wheel steamboat, 218 feet over all and 62 feet beam. The Vassar is a small river tug. Just before the collision the Valentine, having discharged the tow which she had brought up the river, was lying some six or seven hundred feet below the railroad bridge of the New York Central & Hudson River Railroad at Albany. At the same time the Vassar was at Skinner & Arnold's dock about 400 feet above the bridge, and had swung the canal boat out from the dock preparatory to making a trip up the river. The Valentine having occasion to go to her dock, which was above the bridge, whistled for the draw which was

opened to permit her and two other vessels to pass. The drawbridge is some 400 feet in length. Between the center pier on which the bridge swings and the west pier there is a space of about 185 feet of clear water. The situation can easily be understood by an examination of the following map:

The libelant concedes the negligence of the Vassar. There is no dispute that the Vassar saw the Valentine when the latter was below the bridge and knew that she was coming up the river through the open draw. While the Valentine was in the draw the Vassar started with her tow on a course directly across that of the Valentine. Whether the Vassar steered directly east or was on a rounding course under a starboard helm is immaterial, for either course would have brought her directly across the bows of the Valentine. When the Valentine first saw the Vassar the Valentine was in the draw, and the Vassar had just disengaged the canal boat from the dock or a contiguous boat. Nothing in the tug's actions at that time indicated what her intention was. The Valentine blew a signal of inquiry but got no response. She then reversed and ported her helm as far as she could safely do so in the narrow channel of the draw. The Vassar in the mean time kept directly on her course and the collision followed.

It is manifestly unfair to judge the conduct of the Valentine in the light of subsequent events, and to charge her with a knowledge of all the facts which were developed at the trial. The question is, what did she do or omit to do which careful seamanship required, based upon the situation at the time? If she could have known that the Vassar intended, without signal or warning of any kind and in defiance of every rule of prudence, to keep directly on a course across the river, it is possible that she might have averted the accident. An elaborate and ingenious calculation based upon the supposed positions of the boats, their rate of speed, and distance apart, seems to indicate that the Valentine might, perhaps, have avoided the accident by starboarding and passing to the left under the stern of the Vassar. The difficulty with this reasoning is that it proceeds upon the erroneous hypothesis that the Valentine knew or might have known that the Vassar intended to take the dangerous and erratic course which she did take. The pilot of the Valentine was not endowed with prophetic power; he supposed, as he had a right to suppose, that upon discovering that the large steamboat was coming up the river the tug would not attempt to run across her bows. Believing that the Vassar would stop and reverse, the Valentine did all that prudent seamanship required. She gave the signal to go to the right, and immediately reversed her engines and ported her helm. The only tenable theory to be drawn from the testimony is that the accident was occasioned solely by the reckless course of the Vassar. If her course could have been foreseen it is possible that the accident might have been avoided, but the Valentine could not have foreseen it. It is thought that the absence of a lookout did not in any appreciable degree contribute to produce the collision. It follows that the libel must be dismissed.